## Gus Dattilo Fruit Company v. Louisville & Nashville Railroad Company.

(Decided March 27, 1931.)

JAMES BOSWELL YOUNG for appellant.

WOODWARD, HAMILTON & HOBSON, ASHBY M. WARREN, and WILBUR FIELDS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appellant, Gus Dattilo, doing business as Gus Dattilo Fruit Company, sued the appellee, the Louisville & Nashville Railroad Company, for damages to a shipment of bananas charged to have been caused by rough handling. From an adverse judgment on the verdict of a jury, he appeals.

The Moorehead Inspection Bureau, according to the evidence, is an independent organization maintained for the inspection of shipments of perishable merchandise, and, as stated on this trial, is recognized by both carriers and shippers as neutral and impartial. The appellant testified that upon the arrival of the car of bananas involved on Saturday afternoon, January 26, 1929, he discovered they were bruised and mashed, due, as he says, to rough handling. He reported the condition to the railroad company and asked of its employees an

immediate inspection by the inspection bureau, but it was not then made. He testified the bureau inspected every kind of fruit and perishable freight except bananas, and that is why he demanded an inspection. The fruit was thereupon removed to his warehouse. On the following Monday, an inspector of the bureau appeared there and inspected the fruit.

On the trial of this case, the resident manager of the Moorehead Inspection Bureau was introduced by the appellant. He testified his concern made inspections of bananas and other perishable freight for consignees and carriers. Pursuant to the usual course a copy of the inspection report as to the shipment is delivered to the carrier and to the shipper, respectively, and one is retained in the files of the bureau as a permanent record. He had with him a copy of the report kept by his organization of the inspection of the fruit involved, and testified it was made by one Seiter, a regularly employed qualified inspector, in the discharge of his duty and in the regular course of business; that the report before him was in Seiter's handwriting; was a permanent record of the bureau; that all the copies were made by Seiter at the same writing. He further testified that Seiter was permanently residing in Cincinnati, Ohio. The appellant thereupon offered in evidence this document, but upon objection by the appellee it was not admitted, and is in the record as an avowal. The rejection of this evidence, it is claimed, was prejudicial error and is relied on for a reversal of the judgment.

It is an ancient rule of law that a minute, memorandum, or entry in writing made by a person since deceased at or very near to the time when the fact it records took place, in the ordinary course of his business, corroborated by other circumstances which render it probable that the fact occurred, is admissible in evidence. 3 Jones on Evidence, 2120. This general rule, originally very narrow, has been broadened with the growth of the law and made adaptable to changing conditions and modern mercantile and industrial life, although the fundamental principles are essentially the same. Its development and the logic thereof are interestingly noted in L. & N. R. Co. v. Daniel, 122 Ky. 256, 91 S. W. 691, 28 Ky. Law Rep. 1146, 3 L. R. A. (N. S.) 1190, declared by Mr. Wigmore to be one of the best opinions on the subject. 5 Wigmore, sec. 1530.

It may be observed that the applicable rule—that is of admitting entries in books of a third party—although having some of its features, characteristics, and essentials, is to be distinguished from the shop book rule, which admits a party's original books of accounts, often without regard to whether the entrant is dead or alive or available as a witness. 10 R. C. L. 1172. The two rules are often confused. They have points of similarity and are traceable to a common origin, but each doctrine rests on a different basis and has a history of its own. 2 Wigmore, 1517; Radtke v. Taylor, 105 Or. 559, 210 P. 863, 27 A. L. R. 1423. However, we resist the allurement of tracing their courses and deviations and of elaborating upon the distinctions, confining ourselves to indicating the present status and applications to the question before us.

Ordinarily, in the absence of special grounds, books of account or entries cannot be used in evidence upon issues between third persons. 10 R. C. L. 1176. One of the exceptions is that the entries were made against interest and without a motive to falsify by a person since deceased or unavailable as a witness, which entries are made contemporaneously with the event and in the usual course of business of such third person. Another, perhaps more pertinent to the instant case, is that of entries in books of certain corporations when properly authenticated and shown to be regularly kept in the course of ordinary business. 4 Jones on Evidence, 3285. This rule is more fully stated and other authorities cited in Baskett v. Rudy, 186 Ky. 208, 217 S. W. 112, 115.

The antiquity and long recognition of the rule of admitting entries made in regular course of business should be a sufficient answer to the appellee's objection to the evidence that it would be deprived of the right of cross-examination. But there are substantial reasons and circumstantial guaranties for considering such evidence sufficiently trustworthy to admit it untested by cross-examination. As stated by Wigmore, sec. 1522, the experience of human nature indicates three distinct though related motives which operate to secure in the long run a sufficient degree of probable accuracy of entries made systematically and habitually for the recording of a course of business, which abridged are: (1) The habit and regularity of system calls for accuracy; (2) the almost certainty of detection of error or misstatement and falsification and its deterring effect;

and (3) duty to an employer or other superior, with the additional risk of embarrassment and censure from the superior in case of inaccuracies—"a motive on the whole the most powerful and most palpable of the three" See, also, L. & N. R. Co. v. Daniel, supra.

A major ground urged by the appellee for holding the report incompetent is that the party who made it is living and his testimony was available, although he was out of the state. Originally and primarily confined to entries made by a deceased person, in some states. including Kentucky, the rule as to admitting entries of this class has been extended to instances where they were made by one who is beyond the jurisdiction of the court, the identity and authenticity of the entries being established. Our rule in this respect is that where the trial court is satisfied from the evidence that the person making the entry is absent from the state, or his whereabouts are unknown—the other conditions also being shown—it should allow the one having the records in charge to testify and introduce them.

Thus, in Baskett v. Rudy, supra, on authority of Greenleaf on Evidence and Poor v. Robinson, 13 Bush, 290, it was declared that the records of a bank, as a disinterested third party, would be competent if properly proven, although the person making the entries be unavailable as witness, "because of his death, or because he has absconded, or because of some other sufficient reason which makes the obtention of his testimony impracticable."

In Powell v. Commonwealth, 149 Ky. 415, 149 S. W. 889, it was held that the records of an express company as to the delivery of intoxicating liquor to the defendant would be competent when thus proven.

And in Stringer v. Commonwealth, 192 Ky. 318, 233 S. W. 718, a prosecution for stealing cigarettes from a railroad car, it was held proper to permit the one having charge of the records of the Kansas City office of the railroad company to testify to the record made by another person in Missouri which related to the shipment in question. The term "abscond," as commonly used in stating the rule, was construed as including one whose whereabouts were unknown or who was absent from the state.

Under this rule the Missouri Court, in Prebe v. Q., O. & K. C. R. Co. (Mo. App.) 260 S. W. 816, held compe-

tent in an action against the railroad company for damage to livestock a record of a commission merchant who sold the stock, showing weights, etc., the entry having been made in regular course of business, the original weight tickets being outside the state.

That there were other witnesses by whom the same evidence was adducible, does not prevent admission of the record. Says Wigmore, sec. 1421: "On the principle of necessity this exception (to hearsay rule) sanctions the use of statements by persons where testimony, though not necessarily the sole evidence available on the subject, is yet the only testimony now available from that person." See, also, 3 Jones on Evidence, 2120, 2124. The reason is more potent where the report is that of a disinterested person, and it is not shown here there was any other neutral witness available.

One of the requisites of admissibility under the shop book rule is that the entry must be original (see Givens v. Pierson's Adm'x, 167 Ky. 574, 181 S. W. 324, Ann Cas. 1917C, 956, for exhaustive treatment of this phase), and the same requisite is demanded by the regular entries rule (2 Wigmore, sec. 1532). It is claimed that the original of the report was delivered to it and no effort was made to secure its production, so that the document submitted by appellant in possession of the inspection bureau was inadmissible because it was only a copy. It was proven that the report was made by the inspector in triplicate at one writing by the use of carbon paper, and the offered copy was one of them. The reason under the best evidence rule for requiring the production of the original entry does not obtain, for the possibility, often strong probability, of error in copying is not present. The courts, with perhaps a few exceptions, hold that, when duplicates or multiplicates are so made, each one is deemed an original and as primary evidence of the contents of the document; hence, it is not necessary to account for the nonproduction of the other. Davis v. Williams Bros. Const. Co., 207 Ky. 404, 269 S. W. 289. 2 Jones on Evidence, 1466; 10 R. C. L. 924; Liberty Chair Co. v. Crawford, 193 N. C. 531, 137 S. E. 577, 51 A. L. R. 1496.

Nor does it militate against the modern rule that the entry is not contained in a book or bound volume. The material thing is that the mode or form is capable of perpetuating a record of events. In up-to-date systems perhaps the majority use the looseleaf method of keep-

ing accounts, and such when properly identified are admissible as being books of original entry. 10 R. C. L. 1178; 4 Jones on Evidence, 3302. In L. & N. R. Co. v. Daniel, supra, this objection was one of the major points considered, and a loose record of a train dispatcher showing movements of trains was held to be competent under the adaptability of the shop book rule. The same principle must exist in the rule respecting the admission of entries made in the regular course of business. The document offered in evidence in the case at bar was proven as a permanent record and in a form which would bring it within the admissible class, if it were not otherwise objectionable.

Notwithstanding the liberality of the rule of admissibility of regular entry records, we are constrained to hold the report of the inspection bureau's representative was incompetent. It was not shown that work of inspecting shipments extended to any place or time other than in a car on arrival. This inspection was not made before the removal of the bananas from the car, and consequently did not reflect their condition before delivery to the consignee. The fruit had deteriorated during its removal and the intervening two days. The report contains almost entirely hearsay statements, for the information as to everything except the condition of a certain lot of fruit in appellant's warehouse could not have been obtained from personal knowledge or contemporaneously with the making of the report (2 Wigmore, sec. 1530), and that condition, as stated, was changed. For those reasons the trial court did not err in excluding the evidence.

Complaint is also made by the appellant concerning the admission of certain evidence and of the instructions on the measure of recovery. As to the former it need only be said that, in a few instances in which an objection was made and overruled, no exceptions were taken to the court's rulings, which is prerequisite to a consideration of the alleged errors by this court. Stegall v. Patton, 231 Ky. 365, 21 S. W. (2d) 488. The instructions clearly and correctly submitted the law of the case as laid down in Gus Dattilo Fruit Co. v. I. C. R. Co., 222 Ky. 41, 299 S. W. 1089, and Gus Dattilo Fruit Co. v. L. & N. R. Co., 226 Ky. 813, 11 S. W. (2d) 953.

The judgment is affirmed.